**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION**

IN RE:

**JUDY G. TETTERTON**

                    **Debtor.**                                                **Case No. 05-04924-8-JRL**

**JUDY G. TETTERTON**

                    **Plaintiff,**

vs.                                                                             **Adversary Proceeding No.:
05-00257-8-AP**

**CAPITAL EQUITY SERVICES, LLC,
OCWEN FEDERAL BANK,
PCFS MORTGAGE RESOURCES, INC. and
DAVID W. NEILL, ELIZABETH B. ELLS,
MONICA VANDIFORD OR BRIAN WESSELS,
as Substitute Trustee,**

                  **Defendants.**

_____

**ORDER**

      This matter is before the court on the motion to dismiss filed by defendant Ocwen Federal Bank ("Ocwen Federal"). On February 2, 2006, the court conducted a hearing in Wilson, North Carolina.

**FACTUAL BACKGROUND**

      On October 1, 2002, the plaintiff contacted Capital Equity Services, LLC ("Capital Equity") to inquire about refinancing an existing mortgage on her residence. A representative from Capital Equity visited the plaintiff and she filled out a loan application. On November 26, 2002, the plaintiff executed a

promissory note in favor of Capital Equity secured by the plaintiff's primary residence located in Edward, North Carolina (the "mortgage loan"). According to the HUD-1 Settlement Statement, the plaintiff was charged fees in connection with her loan totaling $3,796.06.[1] The note was subsequently assigned to Ocwen Federal.

## PROCEDURAL HISTORY

On June 27, 2005, the plaintiff filed a Chapter 13 petition. Ocwen Federal filed a proof of claim in the case in the amount of $52,370.19. On August 30, 2005, the plaintiff filed a complaint objecting to the secured claim asserted by Ocwen Federal. The first cause of action asserted against the defendants is a violation of the Truth in Lending Act, 15 U.S.C. § 1635. The plaintiff alleges that Ocwen Federal is subject to the right of rescission and an action for damages under 15 U.S.C. § 1602(aa)(1). The second cause of action asserted is a violation of the North Carolina Anti-Predatory Lending Act, N.C.G.S. § 24-1.1A. The plaintiff contends that Ocwen Federal is subject to this claim because the mortgage loan is a "high cost loan" under § 24-1.1E.

The third cause of action asserted is a violation of the North Carolina Usury Law, N.C.G.S. § 24-10(a). The plaintiff alleges that Ocwen Federal is subject to this claim under § 24-1.1E. The fourth and fifth causes of action are breach of fiduciary duty and fraud.[2] The sixth cause of action asserted is a violation of the North Carolina Unfair Trade Practices Act, N.C.G.S. § 75-1. The plaintiff contends

---

[1] The plaintiff's complaint includes an itemization of the charges imposed in connection with the closing of the loan, with a stated total of $3,826.06. After adding together the individual fees listed, the court finds that the total is $3,796.06.

[2] At the hearing, the plaintiff withdrew her claims based on breach of fiduciary duty and fraud as to Ocwen Federal.

that Ocwen Federal is subject to this claim under § 24-1.1E(d). As her seventh cause of action, the plaintiff asserted an equitable claim for unjust enrichment. [3]

On November 30, 2005, Ocwen Federal filed this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its brief in support of the motion, the defendant asserts that the statute of limitations bars the plaintiff's causes of action under N.C.G.S. § 24-1, as the statute of limitations for an action to recover the penalty for usury is two years. Claims based on usurious fees accrue upon the date of the loan closing.[4] As such, the defendant argues that the plaintiff's claims under § 24-1 and N.C.G.S. § 75-1 should be dismissed.[5] Additionally, the defendant contends that the statute of limitations bars the claim asserted under 15 U.S.C. § 1635.

In the plaintiff's response to the defendant's motion, she argues that the claims based on N.C.G.S. § 24-1 are asserted as a defense in recoupment. Consequently, these claims are not subject to the applicable statute of limitations. The plaintiff also asserts that the remedy of rescission has a three year statute of limitations and she filed her complaint within that time period. In conclusion, she contends that the mortgage loan is per se usurious if it is in violation of § 24-1.1E.

## DISCUSSION

I.  Truth in Lending Act

The Truth in Lending Act ("TILA") is a federal statute that governs the terms and conditions of

---

[3] At the hearing, the plaintiff withdrew her claim based on unjust enrichment as to Ocwen Federal.

[4] See Faircloth v. Nat'l Home Loan Corp., 313 F.Supp.2d 544, 553-54 (M.D.N.C. 2003).

[5] The plaintiff alleges that when Ocwen Federal violated N.C.G.S. § 24-1.1E, it constituted a per se violation of the North Carolina Unfair Trade Practices Act, § 75-1.

consumer loans, requiring lenders to make disclosures about loan fees and costs. See 15 U.S.C. § 1601 (2005). TILA was enacted to protect consumers from abusive practices in lending. See In re Cmty. Bank of N. Va. and Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig., 418 F.3d 277, 303-04 (3d Cir. 2005). The Home Ownership and Equity Protection Act ("HOEPA") was enacted as an amendment to TILA with respect to mortgage loans, "creating a special class of regulated loans that were made at higher interest rates or with excessive costs and fees." Id. at 30. If a loan falls into this "special class," the lender must provide the borrower with additional disclosures. If the lender's interest in the loan is assigned, the assignee cannot assert holder in due course defenses to claims brought by a consumer under TILA or other laws. See Short v. Wells Fargo Bank Minn., N.A., Case No. 3:04-1096, 2005 U.S. Dist. LEXIS 28612, *16-17 (S.D. W. Va. November 18, 2005).

    A. Statute of Limitations

Under 15 U.S.C. § 1635(f), a consumer's right of rescission under TILA expires "three years after the date of consummation of the transaction or upon the sale of property, whichever occurs first, notwithstanding the fact that the information and forms required under this section ... have not been delivered to the obligor." An action for damages for a violation of TILA must be brought within one year from the date of the occurrence of the violation. See 15 U.S.C. § 1640(e) (2005). However, a claim under § 1601 may be asserted after one year "as a matter of defense by recoupment or set-off" in an action to collect the debt. Id.

In this case, the alleged TILA violation took place on November 26, 2002 and the plaintiff's complaint was filed on August 30, 2005. The plaintiff's right of rescission is not barred because the complaint was filed within the three year time period. An action for damages under TILA is barred but

the plaintiff contends that she is asserting this claim as a defense in recoupment. The defendant's proof of claim filed in this case operates as an action to collect its debt. See Hill v. Allright Mortgage Co. (In re Hill), 213 B.R. 934, 942 (Bankr. D. Md. 1996). The plaintiff's claim for damages asserted as a defense in recoupment is timely.

### B. HOEPA

Although the claim is timely, the defendant as an assignee of the mortgage loan may not be liable for a violation of TILA unless the loan falls under the provisions of HOEPA. Under 15 U.S.C. § 1602(aa)(1), a mortgage secured by the borrower's principal dwelling is a HOEPA loan if "the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities" or "the total points and fees payable by the consumer at or before closing will exceed the greater of 8 percent of the total loan amount or $400." See also 15 U.S.C. § 1639 (2005). "Points and fees" are finance charges, including any charge payable by the consumer and imposed by the lender as "a condition of the extension of credit." 12 C.F.R. §§ 226.4(a) and 226.32(a)(1)(ii)-1, Supp. I. (2005). The "total loan amount" is the amount financed as determined by § 226.18(b), minus any cost that is included as points and fees under § 226.32(b)(1) and financed by the creditor.

The plaintiff has asserted in her complaint that the amount financed was $46,239.26 and the total points and fees charged in connection with the loan closing were $3,796.06. Eight percent of the total loan amount is $3,699.14. Assuming the factual allegations in the complaint are true, the court finds that the plaintiff's cause of action against the defendant under § 1635 should not be dismissed because the

5

mortgage loan may be covered by the provisions of HOEPA.[6]

II.     State Law Claims

The plaintiff is asserting claims against the defendant based on the North Carolina Anti-Predatory Lending Act and the North Carolina Usury law. Under N.C.G.S.§ 25-3-305(a)(3), a "claim in recoupment of the obligor against the original payee of the instrument" or the transferee of the instrument is permitted "if the claim arose from the transaction that gave rise to the instrument." The Official Comment to § 25-3-305(a)(3) states that this defense "can always be asserted" against an obligee. In Bull v. United States, the United States Supreme Court found that the defense of recoupment "is never barred by the statute of limitations so long as the main action itself is timely." 295 U.S. 247, 262 (1935).

The statute of limitations bars the plaintiff's state law claims if asserted independently, as the applicable statue of limitations is two years.[7] The plaintiff contends, however, that these claims are asserted as recoupment defenses. As such, the claims are timely.

A. North Carolina Anti-Predatory Lending Act

Under N.C.G.S. § 24-1.1E, if the "total points and fees payable by the borrower at or before the loan closing exceed five percent (5%) of the total loan amount" and the total loan amount is $20,000 or more, the mortgage loan constitutes a "high cost loan," subject to the limitations set forth in § 24-1.1E(b) and (c). Unlike a HOEPA loan, however, a "high cost loan" does not strip an assignee of its

---

[6] "In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff, assuming its factual allegations to be true." Cooper v. United States, Civil No. 3:97CV502-V, 2000 U.S. Dist. LEXIS 8988, *8 (W.D.N.C. May 17, 2000).

[7] See N.C.G.S. § 1-53(2).

holder in due course defenses. See Baher Azmy, Squaring the Predatory Lending Circle: A Case for States as Laboratories of Experimentation, 57 FLA. L. REV. 295, 363 (2005) ("[T]he [North Carolina] law does not abrogate the application of the holder-in-due-course doctrine by including an assignee liability provision."). See also Nicholas Bagley, The Unwarranted Regulatory Preemption of Predatory Lending Laws, 79 N.Y.U. L. REV. 2274, 2283 (2004). Additionally, an assignee of a HOEPA loan may assert holder in due course defenses against a state law claim. See Dash v. Firstplus Home Loan Trust, 248 F.Supp.2d 489, 501 n.13 (M.D.N.C. 2003) ("HOEPA does not create a new right or claim that would not otherwise be cognizable under the [state] law.").

The mortgage loan in this case may qualify as a "high cost loan" under § 24-1.1E if the points and fees exceed 5% of the total loan amount. Although the plaintiff can assert a claim under § 24-1.1E, the defendant as an assignee can assert holder in due course defenses to defeat the claim. As the defendant has not asserted this defense, the claim survives the motion to dismiss.[8]

B. North Carolina Usury law

Under N.C.G.S. § 24-10(a), "no lender on loans made under G.S. 24-1.1 shall charge or receive from any borrower or any agent for a borrower, any fees or discounts unless otherwise allowed where the principal amount is less than three hundred thousand dollars ($300,000) and is secured by real property, which fees or discounts in the aggregate shall exceed . . . one percent (1%)" of the total loan amount. Fees and charges allowed under § 24-10(h) and § 24-1.1A(c) are excluded from this

---

[8] The making of a "high cost loan" which violates § 24-1.1E(b) or (c) is unlawful as an unfair or deceptive trade practice in violation of the provisions of § 75-1. See § 24-1.1E(d) (2005). The claim asserted under § 24-1.1E survives the defendant's motion. Accordingly, the plaintiff's claim asserted under § 75-1 will also survive.

calculation.

The fees charged to the plaintiff in connection with the closing of the mortgage loan appear to exceed 1% of the total loan amount. As such, the mortgage loan may be usurious. Ocwen Federal is not only subject to this claim because it is potentially a "high cost loan" under § 24-1.1E. The defendant may also be liable for usury as an assignee. The North Carolina Supreme Court has held that an assignee of a usurious promissory note is liable under § 24-10. See Swindell v. The Fed. Nat'l Mortgage Assoc., 330 N.C. 153, 159 (1991). The defendant in Swindell purchased a note from the original lender that included a provision for late payment charges. Id. at 155. The provision violated § 24-10.1. The Court held that the proper penalty for violating this provision was forfeiture of all late charges. Id. at 161. In this case, the plaintiff is asserting a claim under § 24-10(a). It is not time barred and the defendant may be subject to assignee liability. As such, this claim also survives the motion to dismiss.

## CONCLUSION

Based on the foregoing, the court finds that none of the plaintiff's claims are barred by the applicable statute of limitations. If the mortgage loan is covered by the provisions of HOEPA, the defendant may be liable as an assignee for the claim asserted under TILA. The defendant can assert holder in due course defenses against claims arising under the North Carolina Anti-Predatory Lending

law but may be liable as an assignee for the claim asserted under § 24-10(a) . Accordingly, the

defendant's motion is denied.

**So Ordered.**

**Dated:  March 1, 2006**

*/s/ J. Rich Leonard*
J. Rich Leonard
United States Bankruptcy Judge