**SO ORDERED.**

**SIGNED this 13 day of December, 2007.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**
_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

**IN RE:**

            **Case No. 05-04924-8-JRL**

**JUDY G. TETTERTON,**

   **Debtor.**

_____

**JUDY G. TETTERTON,**

   **Plaintiff,**

  **v.**

**OCWEN FEDERAL BANK,**       **Adversary Proceeding No.**
**MARK S. SLAWINSKI,**        **L-05-00257-8-AP**
**FIRST FIDELITY MORTGAGE,**
**INC., A.K.A. METAMERICA,**
**MORTGAGE BANKERS, INC., and**
**DAVID W. NEILL, ELIZABETH B.**
**ELLS, MONICA VANIFORD or**
**BRIAN WESSELS, as Substitute Trustee,**

   **Defendants.**

## ORDER

This case is before the court on defendant Ocwen Federal Bank's ("Ocwen Federal") motion

for summary judgment. The complaint objects to the secured claim of Ocwen Federal and alleges

multiple violations of North Carolina consumer protection statutes. On December 3, 2007, the court

held a hearing on this matter in Raleigh, North Carolina.

## JURISDICTION AND PROCEDURE

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## FACTS AND BACKGROUND

In November 2002, Tetterton obtained a loan from, and originated by, Capital Equity Services, LLC ("Capital Equity") in the amount of $47,250.00, evidenced by a promissory note and secured by a deed of trust to her primary residence located in Edward, North Carolina. Capital Equity assigned its beneficial interest in the loan to Property Asset Management, Inc., on September 11, 2003.[1] Ocwen Federal began servicing Tetterton's loan on September 12, 2003. On September 22, 2003, Ocwen Federal notified Tetterton that her account was in default in the amount of $1,811.44.

On November 7, 2003, Ocwen Federal and Tetterton signed a Forbearance Agreement under which Ocwen Federal agreed to forgo its right of foreclosure in exchange for Tetterton's commitment to pay the underlying debt. Tetterton signed a second Forbearance Agreement on January 21, 2005, in which she again committed to pay the underlying debt in exchange for Ocwen Federal's renewed promise not to exercise its right to foreclose on the property.

---

[1]On February 26, 2004, Property Asset Management subsequently assigned beneficial interest in the loan to U.S. Bank, N.A., as Trustee for the registered holders of Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2004-GELI.

On June 27, 2005, Tetterton filed a chapter 13 petition.  Ocwen Federal filed a proof of a secured claim.  On August 30, 2005, Tetterton objected to Ocwen Federal's proof of claim and filed the present complaint against Ocwen Federal and the other defendants.  The complaint alleges that Ocwen Federal violated the North Carolina Usury Law, N.C. Gen. Stat. §§ 24 *et seq.*, and the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1, by (1) failing to advise Tetterton that the loan was a "high-cost home loan" under N.C. Gen. Stat. § 24-1.1E, and (2) collecting usurious fees related to the "high-cost home loan."

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

Ocwen Federal's motion for summary judgment asserts several defenses that it contends entitle it to judgment as a matter of law.  First, Tetterton released all of her claims against Ocwen

3

Federal when she entered into the two Forbearance Agreements.  Second, promissory estoppel and estoppel by contract preclude Tetterton's claims because the signed Forbearance Agreements acknowledge that the mortgage was valid and that she had no defenses or counterclaims.  Third, Ocwen Federal did not engage in unfair trade practices or usurious behavior because Tetterton's loan is not a "high-cost home loan" under N.C. Gen. Stat. § 24-1.1E.  Finally, Ocwen Federal is not liable under the North Carolina Usury Law and North Carolina Unfair Trade Practices Act because there is no successor liability under those statutes.  Moreover, even if successor liability existed, Ocwen Federal is the loan servicer rather than a successor or holder of the note.

### A. Forbearance Agreements

Ocwen Federal's first two defenses relate to the release clauses contained in the Forbearance Agreements.  Ocwen Federal contends that these clauses bar the present suit because Tetterton released any and all claims she had against Ocwen Federal.  In addition, Ocwen Federal asserts that estoppel by contract precludes Tetterton from advancing the present claims because her claims take a position regarding the existence of claims that is inconsistent with the previously-signed contractual releases.

Tetterton responds that the Forbearance Agreements are invalid for several reasons.  First, she asserts that the release language is unconscionable under N.C. Gen. Stat. § 75-55 because it does not expressly disclose the nature and consequences of the waivers.  Relatedly, the inclusion of the unconscionable release terms arguably violates N.C. Gen. Stat. § 75-55(1) as a prohibited debt collection act, and the Forbearance Agreements are, therefore, illegal contracts.  Finally, she claims that her signature on the Forbearance Agreements was obtained by duress and coercion.  These arguments present unsettled and difficult issues of North Carolina law whose resolution is

4

unnecessary to the disposition of this case, as other arguments advanced by Ocwen Federal are clearly dispositive.

B. "High-Cost Home Loan"

Ocwen Federal's next defense is that Tetterton's loan is not a "high-cost home loan," and therefore, her allegations are not actionable under the usury and deceptive trade practice statutes. In 1999, North Carolina adopted a predatory lending law to limit abusive practices in home mortgage lending. N.C. Gen. Stat. § 24 *et seq.* Among other things, the law imposes limitations on loan terms and prohibits certain lender practices if the loan is deemed a "high-cost home loan." See e.g., N.C. Gen. Stat. § 24-1.1E(b)(1) (preventing lenders from, in their sole discretion, accelerating the indebtedness of a "high-cost home loan"), N.C. Gen. Stat. § 24-1.1E(c)(1) (prohibits lenders from making high-cost home loans without first receiving certification from an approved counselor that the borrower received counseling "on the advisability of the loan transaction and the appropriate loan for the borrower").

A loan may qualify as a "high-cost home loan" under N.C. Gen. Stat. §24-1.1E(a)(4) if "[t]he total points and fees payable by the borrower at or before the loan closing exceed five percent (5%) of the total amount if the loan amount is twenty-thousand dollars ($20,000) or more . . . ." N.C. Gen. Stat. § 24-1.1E(a)(6)(b). The parties in this case dispute whether the total points and fees exceed five percent of the total loan amount.

In her second Amended Complaint, Tetterton lists the following as applicable points and fees:

| | |
|---|---|
| a. Mortgage Broker fee to first Fidelity Mortgage | $1,417.50 |
| b. Credit Report: Paid to Capital Equity | $25.00 |
| c. Application fee: Paid to Capital Equity | $100.00 |
| d. Processing fee: Paid to Capital Equity | $150.00 |

5

|  |  |
|---|---|
| e. Underwriting Fee: Paid to Capital Equity | $150.00 |
| f. Abstract/Title Search: Abstracting & Audit of NC, LLC | $100.00 |
| g. Title examination to Attorney Mark Black | $600.00 |
| h. Flood Certification: Paid to Capital Equity | $30.00 |
| I. Courier Fee: Paid to Capital Equity | $30.00 |
| j. Wire Transfer Fee: Paid to Capital Equity | $50.00 |
| k. Appraisal fee: Hignite & Associates | $450.00 |
| l. Settlement Fee: Mark Black | $50.00 |
| m. Attorney fee to Mark Black | $50.00 |
| Total: | $3,202.50 |

Thus, she contends that her loan is a "high-cost home loan" under N.C. Gen. Stat. § 24-1.1E because these points and fees ($3,202.50) represent more than five percent of the total loan amount ($47,250.00).

Ocwen Federal disputes the inclusion of the title examination fee to Mark Black ($600.00), attorney fee to Mark Black ($50.00), and appraisal fee paid to Hignite & Associates ($450.00) in the points and fees calculation.  It argues that Tetterton's loan is not a "high-cost home loan" because her actual points and fees total $2,102.50, and therefore constitute only 4.45% of the total loan amount.

Under N.C. Gen. Stat. § 24-1.1E(a)(5)(b), appraisal fees and attorneys' fees are excluded from the points and fees calculation, but attorneys' fees may be excluded only if the borrower has the right to select the closing attorney from an approved list or otherwise.  Ocwen Federal argues that Tetterton had the right to select an attorney for the closing, and in support of this assertion it submits a Preference Checklist for Provider Relationship, signed by Tetterton at the closing, in which she declared:

> I (we) have been informed by the lender that I (we) have a right to select legal counsel to represent me (us) in all matters of this transaction relating to the closing of the loan. . . . Having been informed of this right, and having no preference I (we) asked for assistance from the lender and was referred to a list of acceptable attorneys. From that list I select Mark H. Black.

6

Ocwen Loan Servicing, LLC's Motion for Summary Judgment, Exhibit 3.

Tetterton counters that she did not know, nor was she advised in advance of the closing, that she could choose the attorney for the closing. Declaration of Judy Tetterton. However, Tetterton's express affirmation of this right when she signed the Preference Checklist belies her claim. See Spartan Leasing Inc. v. Pollard, 400 S.E.2d 476, 455 (N.C. App. 1991) ("A person signing a written instrument is under a duty to read it and is ordinarily charged with knowledge of its contents."). With respect to her contention that she was not told of this right in advance of the closing, nothing in the statue requires lenders to affirmatively advise borrowers of this right prior to the closing. The statute only requires that borrowers have the right, and there is uncontradicted evidence in this case that Tetterton knew that she had the right to select the closing attorney.

Based on this evidence, the court finds that there is no genuine issue of material fact as to whether Tetterton's loan is a "high-cost home loan" under N.C. Gen. Stat. § 24-1.1E. Therefore, her usury and deceptive trade practice claims relating to this loan fail as a matter of law, and Ocwen Federal is entitled to summary judgment.

### C. Successor Liability

If the maker of a "high-cost home loan" violates either the limitations imposed on "high-cost home loans," N.C. Gen. Stat. § 24-1.1E(b), or engages in certain prohibited acts and practices, N.C. Gen. Stat. § 24-1.1E(c), a borrower may elect to recover damages under either the North Carolina Unfair Trade Practices Act or the North Carolina Usury Law. N.C. Gen. Stat. § 24-1.1E(d). Even if the court determined that Tetterton's loan qualified as a "high-cost home loan," her claims under both statutes fail as a matter of law because (1) there is no derivative or successor liability for violations of the North Carolina Unfair Trade Practices Act; and (2) while there may be successor

liability for violations of the North Carolina Usury Law, Ocwen Federal is not a successor in interest because it was not a subsequent holder of the note, but merely serviced the loan.

Tetterton's claims arising under the North Carolina Deceptive Trade Practices Act fail as a matter of law because North Carolina courts have held that liability under that statute does not extend to parties who did not directly participate in alleged unlawful activities during the execution of the mortgage.  See Skinner v. Preferred Credit, 616 S.E.2d 676, 680 (N.C. App. 2005) (citing Melton v. Family First Mortgage Corp., 576 S.E.2d 365, 368-69 (N.C. App. 2003)).  As was the case in both Skinner and Melton, there is no evidence in the present case to connect Ocwen Federal with the alleged improprieties based on the execution of the original mortgage.  Thus, Tetterton's claims under N.C. Gen. Stat. § 75-1.1 are not actionable.

Whereas North Carolina courts have declined to impose successor liability under the North Carolina Deceptive Trade Practices Act, the courts have been willing to extend liability for usury to successors in interest even though the subsequent parties did not participate in origination of the loan.  See e.g., Auto Fin. Co. of N.C. v. Wash Simmons & Weeks Motors, Inc., 102 S.E.2d 119, 122 (N.C. 1958) ("[T]he rule is that a note tainted with usury retains the taint in the hands of a subsequent holder.") (alteration in original).  The problem with holding Ocwen Federal liable for usury under this theory is that Ocwen Federal is not a subsequent holder.  Ocwen submits a copy of the "Notice of Assignment, Sale or Transfer of Servicing Rights" that it sent to Tetterton in accordance with the requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605.  Ocwen Loan Servicing, LLC's Motion for Summary Judgment, Exhibit 6.  The document clearly states that Ocwen is an assignee only with respect to the loan's servicing rights.  Tetterton does not submit any authority, nor is the court aware of any, that could support extending successor liability

8

for usury claims to assignees of servicing rights who receive no beneficial interest in the loan. As servicer, Ocwen Federal is simply acting as an agent for the holder of the note. Under traditional legal principles, a disclosed agent acting within the course and scope of its agency is not independently liable. See Walston v. R.B. Whitley & Co., 39 S.E.2d 375, 377 (N.C. 1946). For this reason the court finds that Ocwen Federal is entitled to summary judgment.

## CONCLUSION

Therefore, the court finds that there is no genuine issue of material fact relating to whether Tetterton's loan is a "high-cost home loan" under N.C. Gen. Stat. § 24-1.1E, and Ocwen Federal is entitled to summary judgment. Alternatively, even if the court were to classify Tetterton's loan as a "high-cost home loan," Ocwen Federal is still entitled to summary judgment because (1) there is no successor liability for violations of N.C. Gen. Stat. § 75-1.1, and (2) it is not liable under successor liability for violations of N.C. Gen. Stat. § 24 *et seq.* because it was not a holder of the note. Ocwen Federal's motion for summary judgment is GRANTED.

**"END OF DOCUMENT"**